## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TIMOTHY HOWELL,

      Plaintiff,

v.                                Case No. 8:24-cv-319-WFJ-TGW

RICK WELLS, *et al.*,

      Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court on *pro se* Plaintiff Timothy Howell's civil rights complaint, filed pursuant to 42 U.S.C. § 1983. (Doc. 6). Upon review, *see* 28 U.S.C. § 1915(e)(2)(B), because Mr. Howell has failed to state a viable § 1983 claim, he will be required to file an amended complaint if he wishes to proceed with this action.

## I.    Background

Mr. Howell, formerly a pretrial detainee at the Manatee County Jail, sues Sheriff Rick Wells, Major Yvonne Miller, Major Tom Porter, YesCare, Corp., and Nurse Phillips. (Doc. 6 at 1-2). Mr. Howell alleges that on December 5, 2023, he suffered "two broken fingers" as a result of an "alleged misdemeanor battery that led to his arrest." (*Id.* at 2). Following his arrest, Mr. Howell was taken to the Manatee County Jail and "housed in the infirmary." (*Id.*) Nurse Phillips, a YesCare employee, told Mr. Howell that his "left pinky finger" looked "out of place." (*Id.*) Accordingly, Nurse Phillips performed the "procedure of popping [Mr. Howell's] left pinky finger back into place." (*Id.*) According to Mr.

Howell, the finger ended up "worse off" due to Nurse Phillips's "improper application of the bone popping adjustment." (*Id.*)

Soon after, "medical staff" took X-rays of Mr. Howell's "two fingers." (*Id.*) The findings led staff to "immediately" transport Mr. Howell to Manatee Memorial Hospital. (*Id.*) Two doctors saw Mr. Howell at the hospital, and he underwent another round of X-rays. (*Id.* at 3). The "surgeon doctor" recommended "immediate surgery" for Mr. Howell's broken fingers. (*Id.*) The procedure was scheduled "for the next day"—December 6, 2023—and Mr. Howell was taken back to the jail. (*Id.*) Although Mr. Howell was told "not to eat because he would go under anesthesia the following day," he was not "transported to surgery" on December 6. (*Id.*)

Mr. Howell "posted bond" on December 7, but returned to jail the next day "for an alleged misdemeanor." (*Id.*) He was once again placed in the infirmary. (*Id.*) There, "medical staff" put a splint on Mr. Howell's "left pinky finger" and "buddy taped" his "right ring finger." (*Id.*). Medical personnel also prescribed ibuprofen and told Mr. Howell he "was being scheduled for surgery." (*Id.*) Over the next few weeks, Mr. Howell made "numerous complaints of chronic pain" and "inquir[ed] [of] the nurses about his upcoming surgery." (*Id.*) Then, on January 4, 2024, Mr. Howell was taken to HCA Florida Blake Hospital for "another X-ray exam." (*Id.*) The doctor said that "the surgery needed to be done very soon" and would be scheduled for "next week"—*i.e.*, the "second week of January 2024." (*Id.* at 3-4). But Mr. Howell was "not taken to surgery" that week. (*Id.* at 4).

On January 17, 2024, Nurse Phillips evaluated Mr. Howell in his cell and told him that doctors would "have to re-break" his "right ring finger" due to "how much time had lapsed." (*Id.* at 5). Nurse Phillips also said that Mr. Howell was "scheduled for surgery," and that he would be moved from the jail for that purpose once "transportation [became] available." (*Id.*) Two days later, Mr. Howell told Major Miller "about his chronic pain and delayed surgery." (*Id.*) Major Miller promised to "check on that." (*Id.*) Later that day, Major Miller told Mr. Howell that, according to "medical admin," "there was no scheduled surgery" and he had recently "been to the hospital for an evaluation." (*Id.*) Finally, on January 22, 2024, Mr. Howell submitted an "investigations grievance" to Sheriff Wells, Major Miller, and Major Porter, complaining that "your staff" had "delayed or denied" surgery for his broken fingers. (*Id.* at 12). He had not received a response by January 26, 2024—the day he signed the complaint in this action. (*Id.* at 12, 25).

In his complaint, Mr. Howell accuses Sheriff Wells, Major Miller, and Major Porter of "ordinary negligence" for, among other things, "failing . . . to see that [he] was furnished with medical care." (*Id.* at 7). Mr. Howell also seeks to hold YesCare liable for "medical negligence" and "cruel and unusual punishment." (*Id.* at 6-7). Finally, Mr. Howell alleges that Nurse Phillips (1) committed "medical malpractice" when she "improper[ly]" "pop[ped] Mr. Howell's left pinky finger" back into place; and (2) was deliberately indifferent to his "serious medical need for surgery." (*Id.* at 6-7). As relief, Mr. Howell seeks nominal, compensatory, and punitive damages. (*Id.* at 8).

## II.     Discussion

Mr. Howell's § 1983 claims for inadequate medical care arise under the Due Process Clause of the Fourteenth Amendment. *Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege facts showing "(1) that he had an objectively serious medical need, (2) that [the defendant] acted with subjective deliberate indifference to [that] serious medical need, and (3) that he suffered an injury . . . caused by [the defendant's] wrongful conduct." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019). "A defendant is deliberately indifferent to a plaintiff's serious medical need when he (1) ha[s] subjective knowledge of a risk of serious harm; (2) disregard[s] that risk; and (3) act[s] with more than gross negligence." *Patel*, 969 F.3d at 1188. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

With these standards in mind, the Court considers whether Mr. Howell states a viable § 1983 claim against each defendant.

### A.     Nurse Phillips

Mr. Howell fails to state a § 1983 claim based on Nurse Phillips's allegedly improper treatment of his broken fingers. According to Mr. Howell, Nurse Phillips "improper[ly]" applied the "procedure of popping [Mr. Howell's] left pinky finger back into place." (Doc. 6 at 2). As a result, the finger was allegedly "worse off" than it was

before Nurse Phillips performed the procedure. (*Id.*) At most, these allegations suggest "accidental inadequacy, negligence in . . . treatment, or [] medical malpractice"—none of which suffices to state a constitutional violation. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *see also Williams v. Tucker*, No. 5:13-cv-9-RS-GRJ, 2015 WL 74991, at *11 (N.D. Fla. Jan. 6, 2015) ("To the extent Plaintiff claims that Nurse Gunn improperly treated his wrist, the allegations are insufficient to state a claim against her because a complaint that a physician or nurse is negligent in treating a medical condition is insufficient to rise to the level of [a constitutional violation].").

Mr. Howell also fails to state a § 1983 claim against Nurse Phillips based on the delay in surgery. Mr. Howell appears to fault Nurse Phillips for mistakenly stating that he was "scheduled for surgery" when, in fact, "there was no scheduled surgery." (Doc. 6 at 5). But the complaint fails to allege any facts showing that Nurse Phillips knew the surgery had not been scheduled. Nor does the complaint suggest that Nurse Phillips "acted with more than gross negligence" with respect to scheduling the procedure. *Patel*, 969 F.3d at 1188. "To the extent [] there was a negligent failure to schedule [the surgery] after [the doctors] directed that [it] be scheduled, this mistake or negligent action alone is not sufficient to bring a constitutional claim of deliberate indifference." *McKnight v. Garriott*, No. 3:15-cv-159-BJD-JRK, 2018 WL 6019706, at *28 (M.D. Fla. Nov. 16, 2018); *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) ("Although the intentional failure to schedule an appointment with a specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not.").

**B.      Sheriff Wells, Major Miller, and Major Porter**

Mr. Howell apparently seeks to impose supervisory liability on Sheriff Wells, Major Miller, and Major Porter. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

Mr. Howell does not allege that Sheriff Wells, Major Miller, or Major Porter personally participated in any aspect of his medical care. Thus, he must plead facts showing a causal connection between the actions of these defendants and the delay in treatment for his broken fingers. Mr. Howell "can meet that extremely rigorous challenge" by showing that "(1) a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he[] fail[ed] to do so; (2) a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1298.

Mr. Howell fails to allege the requisite causal connection. He does not plead that Sheriff Wells, Major Miller, or Major Porter personally directed any subordinates to act unlawfully. Nor does he allege that these defendants knowingly failed to stop jail officials from violating his constitutional rights. Likewise, Mr. Howell sets forth no facts showing that the alleged delay in treatment resulted from a policy or custom. *See Christmas v.*

- 6 -

*Harris Cnty.*, 51 F.4th 1348, 1356 (11th Cir. 2022) ("A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) ("A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law."). And Mr. Howell fails to plead that "a history of widespread abuse put[] [the defendants] on notice of the need to correct the alleged deprivation." *Myrick*, 69 F.4th at 1298.

Mr. Howell does allege that, shortly before he filed the complaint in this action, he submitted a grievance about his medical issues to Sheriff Wells, Major Miller, and Major Porter. (Doc. 6 at 12). The complaint does not plead that these defendants ever received or reviewed the grievance. Regardless, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance." *Marshall v. Connolly*, No. 3:20-cv-145-BJD-PDB, 2020 WL 1476176, at *2 (M.D. Fla. Mar. 26, 2020); *see also Oliver v. Calderon*, No. 6:17-cv-1792-GAP-TBS, 2019 WL 1254844, at *6 (M.D. Fla. Mar. 19, 2019) ("The fact that Defendants . . . at some point became aware of the alleged denial of medical care through a grievance or letter is insufficient to state a claim against a supervisory official.").

Mr. Howell also alleges that, shortly before he brought this lawsuit, he told Major Miller "about his chronic pain and delayed surgery." (Doc. 6 at 5). After consulting with "medical admin," Major Miller allegedly told Mr. Howell that "there was no scheduled surgery" and reminded him that he had recently "been to the hospital for an evaluation." (*Id.*) These allegations are insufficient to establish supervisory liability. According to Mr.

Howell, Major Miller is "the Corrections Bureau Chief responsible for . . . Manatee County [Jail] operations and supervision." (*Id.* at 2). Nothing in the complaint suggests that Major Miller is a medical professional. "Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates." *Mosley v. Caravivello*, No. 6:19-cv-100, 2020 WL 1433591, at *2 (S.D. Ga. Feb. 20, 2020) (collecting cases), *adopted by* 2020 WL 1441411 (S.D. Ga. Mar. 18, 2020).

For these reasons, Mr. Howell fails to state a viable § 1983 claim against Sheriff Wells, Major Miller, or Major Porter.

### C.  YesCare

Finally, Mr. Howell fails to state a § 1983 claim against YesCare, a healthcare provider at the Manatee County Jail. "[W]hen a private entity [such as YesCare] contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Thus, to state a § 1983 claim against YesCare, Mr. Howell must allege that it "had a policy or custom of deliberate indifference that led to the violation of his constitutional right." *Id.*

Mr. Howell alleges no facts suggesting that the delay in treatment for his broken fingers resulted from a policy or custom of YesCare. He pleads that YesCare "is a new medical agency of the jail conducting the same policies as the last agency that was ousted less than a year ago. (Doc. 6 at 4). But Mr. Howell does not specify what these "policies"

were or how they reflected "deliberate indifference" to inmates' constitutional rights. *Craig*, 643 F.3d at 1310. Thus, the § 1983 claim against YesCare is subject to dismissal.

Because Mr. Howell fails to state a § 1983 claim against any of the named defendants, the Court dismisses his complaint without prejudice. In light of his *pro se* status, the Court will give Mr. Howell an opportunity to amend his complaint. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). If he chooses to amend, Mr. Howell should carefully review the legal standards set forth above before drafting his amended complaint.[1]

## III.   Conclusion

Accordingly, it is **ORDERED** that:

1.   Mr. Howell's complaint (Doc. 6) is **DISMISSED WITHOUT PREJUDICE**.

   a.  If Mr. Howell wishes to amend, he shall file an amended complaint within **THIRTY DAYS** of the date of this order.

---

[1] It appears that Mr. Howell may have intended to raise state-law claims concerning his medical treatment in the jail. Where a district court "has dismissed all claims over which it ha[d] original jurisdiction," 28 U.S.C. § 1367(c)(3) provides that the court may decline supplemental jurisdiction over any remaining state-law claims. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court."). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089. Because Mr. Howell's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over any state-law claims at this juncture.

b. To amend, Mr. Howell should complete a new civil rights complaint form, titling it "Amended Complaint." The amended complaint must include all of Mr. Howell's claims and may not refer back to, or incorporate, the complaint. The amended complaint shall supersede the complaint. *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

c. The amended complaint shall be subject to initial screening under 28 U.S.C. § 1915(e)(2)(B). If the amended complaint states viable claims for relief, the Court will issue an order regarding service of process.

2. If Mr. Howell fails to file an amended complaint by the above deadline, or fails to seek an extension of time to do so, this order dismissing the complaint without prejudice will become a final judgment. "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff [amending his complaint or] seeking an extension. And when the order becomes a final judgment, the district court loses 'all its prejudgment powers to grant any more extensions' of time to amend the complaint." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720-71 (11th Cir. 2020) (quoting *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994)).

3. Mr. Howell must advise the Court of any change of address. He must entitle the paper "Notice to the Court of Change of Address" and must exclude any

motions from the notice. Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

4.      The Clerk is **DIRECTED** to mail to Mr. Howell a copy of the standard prisoner civil rights complaint form.

**DONE** and **ORDERED** in Tampa, Florida, on March 15, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE